**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**


**MATTHEW RYAN ELLIOTT**                                              **PETITIONER**


**v.**                          **NO. 4:22-cv-00947-JM-PSH**


**DEXTER PAYNE**                                              **RESPONDENT**


<u>FINDINGS AND RECOMMENDATION</u>


<u>INSTRUCTIONS</u>


The following proposed Recommendation has been sent to United States District Judge James M. Moody, Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

DISPOSITION

I. INTRODUCTION. In this case, petitioner Matthew Ryan Elliott ("Elliott") challenges his 2020 re-sentencing in Columbia County Circuit Court ("trial court"). He does so by means of a petition for writ of habeas corpus pursuant to 28 U.S.C. 2254. It is recommended that the petition be dismissed. The claims raised in his petition were reasonably adjudicated by the state courts or otherwise warrant no relief.

II. STATE AND FEDERAL COURT PROCEEDINGS. The events surrounding Elliott's guilty plea, and the sentence he initially received, were summarized by the Arkansas Supreme Court as follows:

> In the early morning hours of February 5, 2000, Elliott bludgeoned fifteen-year-old Brittni Pater at least seventeen times in the head with a two-foot aluminum bar. See Davis v. State, 350 Ark. 22, 26-27, 86 S.W.3d 872, 875 (2002) (direct appeal of Elliott's accomplice). Elliott then drove over the victim's head with his car, and Pater died from her injuries. Id. at 27, 86 S.W.3d at 875. Elliott, who was sixteen years old at the time, killed Brittni because he believed she was pregnant with his child. Id., 86 S.W.3d at 875. On April 19, 2000, he pleaded guilty to capital murder. The State waived the death penalty, and Elliott received a mandatory sentence of life imprisonment without the possibility of parole. See Ark. Code Ann. 5-10-101(c) (Repl. 1997) (amended 2017).

See Elliott v. State, 2021 Ark. 114, 2021 WL 2012632, 1 (2021).

In 2012, the United States Supreme Court decided <u>Miller v. Alabama</u>, 567 U.S. 460 (2012). In <u>Miller</u>, the Supreme Court held that the Eighth Amendment forbids a sentencing scheme mandating life in prison without the possibility of parole for a juvenile offender.[1] The Supreme Court later held in <u>Montgomery v. Louisiana</u>, 577 U.S. 190 (2016), that <u>Miller</u> announced a new substantive rule of constitutional law to be given retroactive effect.

On the heels of <u>Miller</u>, Elliott filed a state petition for writ of habeas corpus. The petition was granted in 2016, and his sentence was vacated. He then returned to the trial court for re-sentencing.

In 2017, the State of Arkansas enacted the Fair Sentencing of Minors Act ("FSMA"), which eliminated life in prison without the possibility of parole as a sentencing option for a juvenile offender. If the offender were younger than eighteen years old when he committed capital murder, he would be sentenced to "life imprisonment with the possibility of parole after serving a minimum of thirty … years' imprisonment." <u>See</u> <u>Ark</u>. <u>Code</u> <u>Ann</u>. 5-4-104(b), <u>Ark</u>. <u>Code</u> <u>Ann</u>. 5-10-101(c)(1)(B).

---

[1]    On the same day the United States Supreme Court decided <u>Miller</u>, the Supreme Court decided the companion case of <u>Jackson v. Hobbs</u>, 567 U.S. 460 (2012). In <u>Jackson</u>, the Supreme Court struck down the State of Arkansas' sentencing scheme mandating life in prison without the possibility of parole for a juvenile offender.

In 2017, the trial court re-sentenced Elliott. The trial court found that the recently enacted FSMA applied to him and sentenced him to life in prison with the possibility of parole after thirty years.

Elliott appealed his 2017 re-sentencing. The state Supreme Court found reversible error, in part, because the FSMA did not apply to him. The appellate court so found because he committed capital murder before the effective date of the FSMA. The appellate court remanded the case to the trial court for re-sentencing, a proceeding during which Elliott would be permitted to present "<u>Miller</u> evidence for consideration and where he [would be] subject to the discretionary sentencing range for a Class Y felony, which is ten to forty years or life." <u>See</u> <u>Elliott v. State</u>, 2019 Ark. 162, 2019 WL 2223122, 2 (2019).

Elliott returned to the trial court a second time for re-sentencing. There, the following occurred:

> Prior to resentencing, Elliott filed a "Motion to Determine the Appropriate Procedure and Sentencing Range for Resentencing" and argued that the proper sentencing range included a term of imprisonment from ten to forty years—not ten to forty years, or life. Alternatively, he argued that the circuit court should bifurcate his resentencing proceeding and make a threshold finding of irreparable corruption or permanent incorrigibility prior to considering a sentence of life without parole. The circuit court denied Elliott's sentencing motion.

> On February 25, 2020, the circuit court began a four-day
> resentencing hearing during which the State presented
> testimony from law enforcement, expert witnesses from the
> Arkansas State Crime Laboratory, Elliott's codefendant, and the
> victim's parents. The defense offered testimony from an expert
> witness in neuropsychology, a former inmate, Elliott's childhood
> friend, his mother, prison officials, and Elliott.

See Elliott v. State, 2021 WL 2012632, 1.

At the close of the evidence, the trial court conducted a conference

to settle the instructions. See Docket Entry 11-4 (Exhibit A-3) at CM/ECF 4-

13. The prosecution offered a juvenile capital murder instruction that was

eventually given, and it provided, in full, the following:

> Matthew R. Elliott plead guilty to Capital Murder on April
> 19, 2000. He was sixteen years old at the time of the offense.
> He is to be sentenced on the charge of Capital Murder which,
> when committed by a person under the age of eighteen, is
> punishable by a term of not less than ten years, nor more than
> forty years or to a term of life imprisonment in the Arkansas
> Department of Correction.
>
> Matthew R. Elliott may not be sentenced to life
> imprisonment without consideration of, if any, his special
> circumstances in light of the principles and purposes of juvenile
> sentencing. He must be treated as a juvenile for purposes of
> this sentencing. Juveniles are constitutionally different from
> adults for purposes of sentencing.
>
> First, juveniles have a lack of maturity and an
> undeveloped sense of responsibility, leading to recklessness,
> impulsivity and heedless risk-taking.

Second, juveniles are more vulnerable to negative influences and outside pressures, including from their family and peers; [t]hey have limited control over their own environment and lack the ability to extricate themselves from horrific, crime producing setting[s].

Third, a juvenile's character is not as well formed as an adult's character. His traits are less fixed and his actions less likely to be evidence of irretrievable depravity.

Before sentencing the defendant to life imprisonment, the jury must take into account how juveniles are different and how those differences counsel against sentencing them to a lifetime in prison.

See Id. at CM/ECF 259-261.[2] Elliott offered a similar juvenile capital murder instruction, but his version of the instruction was different in that the last paragraph included additional language from Miller. His version of the last paragraph was, in full, as follows:

Before sentencing Matthew Ryan Elliott to life, the jury must take into account how children are different and how those differences counsel against sentencing them to a lifetime in prison. *Jurors may sentence Matthew Ryan Elliott to a lifetime in prison only if you conclude that Matthew Ryan Elliott is that rare juvenile offender who exhibits such irretrievable depravity that rehabilitation is impossible and life imprisonment is justified. In light of children's diminished culpability and heightened capacity for change, appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon.*

---

[2]   Although the parties refer to the instruction as a permanent incorrigibility instruction, the undersigned will refer to it as a juvenile capital murder instruction as the state Supreme Court referred to the instruction as such.

See Id. at CM/ECF 422. (Emphasis added).[3] The trial court declined to give Elliott's version of the juvenile capital murder instruction. See Id. at CM/ECF 7-10.

The jury was then instructed that capital murder, "when committed by a juvenile, is punishable by imprisonment for a term of not less than ten years and not more than forty years, or life." See Elliott v. State, 2021 WL 2012632, 1. After deliberating, the jury sentenced Elliott to life.

Elliott appealed his 2020 re-sentencing. He raised three claims for review. First, he alleged that the trial court erred when it denied his motion to determine the appropriate procedure and sentencing range for his re-sentencing. It was his position that the appropriate sentencing range was a term of ten to forty years—not a term of ten to forty years, or life—and he should have been sentenced to life in prison only after a threshold finding that he was the rare juvenile offender whose crime reflected permanent incorrigibility. Second, he alleged that the trial court erred when it did not give his version of the juvenile capital murder instruction. As a part of his second claim, he alleged the following in a reply brief:

---

[3]     The phrases "permanent incorrigibility" and "irretrievable depravity" are used throughout the record in this case. The undersigned accepts respondent Dexter Payne's representation that the concepts are synonymous. For the sake of consistency, the undersigned will use the phrase "permanent incorrigibility."

(...) the requirement that fundamental fairness and
evenhanded justice require that similarly situated offenders
must be treated the same applies to this issue, too. In <u>Lasley v.
State</u>, 2017 Ark. 311, the circuit court permitted the same
permanent-incorrigibility instruction that the circuit court
denied Elliott. The State appealed. This Court dismissed the
State's appeal as unnecessary to the correct and uniform
administration of the law, but the fact remains: Lasley and
Elliott are similarly situated juvenile homicide offenders. The
circuit court instructed Lasley's jury that it could sentence
Lasley to a lifetime in prison <u>only</u> if it found he was "that rare
juvenile offender who exhibits such irretrievable depravity that
rehabilitation is impossible." <u>Id</u>. at 2. (Footnote in original: The
circuit court instructed the Lasley jury on the permanent-
incorrigibility rule, a rule Elliott maintains is a substantive rule
of law. After receiving the instruction, the jury sentenced
Lasley to forty years. The circuit court denied Elliott the
opportunity to make the same argument.) Lasley was afforded
the permanent-incorrigibility instruction, but Elliott, a similarly
situated defendant, was not. Fairness and evenhanded justice
compel the conclusion that Elliott be treated the same as
Lasley.

<u>See</u> Docket Entry 11-7 (Exhibit D) at CM/ECF 9-10. Last, Elliott alleged that

the trial court erred when it refused to permit a witness to compare

Elliott's rehabilitation with the rehabilitation of other inmates.

The state Supreme Court found no reversible error and affirmed

Elliott's 2020 re-sentencing. <u>See</u> <u>Elliott v. State</u>, 2021 WL 2012632. The

appellate court found that the juvenile capital murder instruction given

the jury was an accurate statement of the law, and language pertaining to

permanent incorrigibility was not required. The appellate court did not

address the assertion Elliott first raised in his reply brief, i.e., the juries in the cases of similarly situated defendants, for instance the jury in Lasley v. State, 2017 Ark. 311, 530 S.W.3d 350 (2017), were charged with the version of the juvenile capital murder instruction he proposed but the trial court refused to give.

Elliott then filed a petition for post-conviction relief pursuant to Arkansas Rule of Criminal Procedure 37. In the petition, he raised claims that included the following:

(A) His 2020 re-sentencing violated his state and federal constitutional rights to equal protection because he was denied the version of the juvenile capital murder instruction granted similarly situated defendants.

(B) His 2020 re-sentencing violated his state and federal constitutional rights to due process because he was denied the version of the juvenile capital murder instruction granted similarly situated defendants.

(C) His 2020 re-sentencing violated his state and federal constitutional rights to fundamental fairness because he was denied the version of the juvenile capital murder instruction granted similarly situated defendants.

(D) The Arkansas courts should follow the dissenting opinion in <u>Jones v. Mississippi</u>, 593 U.S. ---, 141 S.Ct. 1307, 209 L.Ed.2d 390 (2021), and find that the trial court should have given the version of the juvenile capital murder instruction Elliott proposed because the majority opinion in <u>Jones</u> conflicts with clearly established law as announced in <u>Miller</u>.

The trial court denied Elliott's Rule 37 petition, and he appealed. The state Supreme Court found no reversible error and affirmed the denial of his petition. <u>See</u> <u>Elliott v. State</u>, 2022 Ark. 165, 653 S.W.3d 776 (2022).

Elliott then began this case by filing the petition at bar. In the petition, he raised the following five claims:

(1) His 2020 re-sentencing violated his Fourteenth Amendment right to Equal Protection because he was denied the version of the juvenile capital murder instruction granted similarly situated defendants.

(2) His 2020 re-sentencing violated his Fifth and Fourteenth Amendment rights to Due Process because he was denied the version of the juvenile capital murder instruction granted similarly situated defendants.

(3) Elliott's 2020 re-sentencing violated his Fourteenth Amendment right to Fundamental Fairness because he was denied the version of the juvenile capital murder instruction granted similarly situated defendants.

(4) The jury at his 2020 re-sentencing should have been given the version of the juvenile capital murder instruction he proposed because the instruction is consistent with the dissenting opinion in <u>Jones</u>.

(5) His constitutional rights were violated when the trial court refused to permit a witness to compare Elliott's rehabilitation with the rehabilitation of other inmates.

Respondent Dexter Payne ("Payne") filed a response to the petition. In the response, Payne maintained that the petition should be dismissed, in part, because Elliott's claims are procedurally barred from federal court review, were reasonably adjudicated by the state courts, or warrant no relief.

Elliott filed a reply in which he maintained that his claims are not procedurally barred from federal court review, were not reasonably adjudicated by the state courts, and warrant relief. As a part of so maintaining, Elliott observed that he is similarly situated with David Lasley ("Lasley") and Chad Kitchell ("Kitchell") in that they are each juvenile offenders who were initially sentenced to life in prison without the possibility of parole. Their sentences were vacated on the heels of <u>Miller</u>, and, at their subsequent re-sentencings, they each offered the same juvenile capital murder instruction. "Lasley and Kitchell were afforded this

instruction, but [Elliott] was not," <u>see</u> Docket Entry 12 at CM/ECF 8, and

"[n]o reading of <u>Miller</u>, <u>Montgomery</u>, or <u>Jones</u> can justify arbitrary

inequitable treatment of similarly situated defendants, <u>see Id</u>. at CM/ECF

11. Elliott maintained that he was prejudiced by the trial court's refusal to

give his version of the instruction because he "based his entire defense on

proving himself to be remorseful and rehabilitated." <u>See Id</u>. at CM/ECF 12.

Elliott noted that the prejudice was compounded when the trial court

refused to permit a witness to compare Elliott's rehabilitation with the

rehabilitation of other inmates.

 III. CLAIMS ONE, TWO, AND THREE. In Elliott's first three claims, he

challenges the trial court's refusal to give the same juvenile capital murder

instruction that was given at Lashley and Kitchell's re-sentencings. Elliott

maintains that the disparate treatment violated his Fifth and Fourteenth

Amendment rights.[4]

 As a general rule, improper instructions rarely form a basis for federal

habeas corpus relief. <u>See</u> <u>Davis v. Campbell</u>, 608 F.2d 317 (8th Cir. 1979).

In order to obtain relief on such a claim, the petitioner must show that the

improper instructions resulted in a "fundamental defect which inherently

---

[4] It may be that one or more of Elliott's first three claims are procedurally barred from federal court review. Rather than wade through the procedural bar analysis, the undersigned will simply by-pass the issue.

results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." <u>See</u> <u>Williams v. Lockhart</u>, 736 F.2d 1264, 1267 (8th Cir. 1984) (internal quotation marks and citations omitted).

The undersigned has carefully reviewed <u>Miller</u>, <u>Montgomery</u>, and <u>Jones</u>, as well as the record in this case. The undersigned finds that Elliott cannot make the showing required by <u>Williams v. Lockhart</u>, and his first three claims warrant no relief for the reasons that follow.

First, the state Supreme Court found that the version of the juvenile capital murder instruction given here is an accurate statement of the law as announced in <u>Miller</u>. <u>See</u> <u>Elliott v. State</u>, 2021 WL 2012632.[5] The appellate court's adjudication of that issue neither contradicts nor unreasonably applies <u>Miller</u>, or the cases that followed <u>Miller</u>, for instance, <u>Montgomery</u> and <u>Jones</u>.[6] The undersigned defers to the appellate court's

---

[5]     The undersigned again notes that <u>Miller</u> forbids a sentencing scheme mandating life in prison without the possibility of parole for a juvenile offender. Here, though, Elliott did not face a mandatory sentence of life in prison without the possibility of parole. He instead faced a sentencing range for a Class Y felony in the State of Arkansas, <u>i.e.</u>, ten to forty years, or life. The jury had the discretion to sentence him within that range and chose to sentence him to life.

[6]     28 U.S.C. 2254(d) provides that if a claim is adjudicated on the merits in state court, a federal court cannot grant relief unless the state court (1) contradicts or unreasonably applies Supreme Court precedent, or (2) makes an adjudication based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

adjudication of the issue. It is difficult to see, then, how the giving of an accurate statement of the law as announced in <u>Miller</u>, an instruction specifically crafted for a juvenile offender facing a Class Y felony, resulted in a fundamental defect which inherently results in a complete miscarriage of justice or involved an omission inconsistent with the rudimentary demands of fair procedure.

Second, Elliott invites the undersigned to consider whether the version of the juvenile capital murder instruction he offered, and was given at Lashley and Kitchell's re-sentencings, was an accurate statement of the law and was therefore required to have been given at Elliott's re-sentencing. The undersigned declines the invitation, primarily because the instruction the trial court gave here is an accurate statement of the law as announced in <u>Miller</u>.

Third, assuming the invitation must be accepted, the state Supreme Court found that an instruction on permanent incorrigibility, which Elliott's version of the juvenile capital murder instruction encompassed, was not required. <u>See</u> <u>Elliott v. State</u>, 2021 WL 2012632. The appellate court's adjudication neither contradicts nor unreasonably applies <u>Jones</u>, which held that a jury is not required to make a finding of permanent incorrigibility before imposing a discretionary sentence of life in prison

without the possibility of parole on a juvenile offender. The undersigned defers to the appellate court's adjudication of that issue. It is difficult to see, then, how the failure to give an instruction that was not required resulted in a fundamental defect which inherently results in a complete miscarriage of justice or involved an omission inconsistent with the rudimentary demands of fair procedure. The fact that the instruction was given at Lashley and Kitchell's re-sentencing is ultimately of no moment.

Fourth, notwithstanding the foregoing, Elliott's position is understandable: he believes he was treated unfairly when the jury at his re-sentencing was not charged in the same manner as the juries at Lashley and Kitchell's re-sentencings. The undersigned knows of no authority, though, for the proposition that the exact same juvenile capital murder instruction must be given at every juvenile capital murder sentencing. Elliott has certainly not cited any such authority.

IV. CLAIM FOUR. Elliott's fourth claim is that the jury at his re-sentencing should have been charged with the version of the juvenile capital murder instruction he proposed, specifically, the portion of the instruction touching on permanent incorrigibility. He so maintains because that portion of the instruction is consistent with the dissenting opinion in Jones.

Elliott's fourth claim warrants no relief. The state Supreme Court found that an instruction on permanent incorrigibility was not required. The undersigned defers to the appellate court's adjudication of that issue. The adjudication is consistent with <u>Jones</u>, and it is difficult to see how the failure to give an instruction that was not required resulted in a fundamental defect which inherently results in a complete miscarriage of justice or involved an omission inconsistent with the rudimentary demands of fair procedure.

Elliott asks that the dissenting opinion in <u>Jones</u> be embraced because his re-sentencing occurred before <u>Jones</u> was decided and the majority opinion in <u>Jones</u> created a new rule of law contrary to <u>Miller</u> and <u>Montgomery</u>. The undersigned disagrees. The undersigned instead agrees with Payne that the majority opinion in <u>Jones</u> "specifically addressed <u>Miller</u> and <u>Montgomery</u> and held that [the] opinion was consistent with what those two cases required and did not represent a break in precedent." <u>See</u> Docket Entry 11 at CM/ECF 18 (citing <u>Jones v. Mississippi</u>, 141 S.Ct. at 1321).

V. CLAIM FIVE. Elliott's last claim is that the trial court ran afoul of <u>Miller</u> and the Eighth Amendment when the trial court refused to permit a witness to compare Elliott's rehabilitation with the rehabilitation of other inmates. Specifically, Elliott alleges the following:

> At resentencing, [Elliott] called Deputy Warden Phillip Glover. Glover had known and worked with [Elliott] for several years. Glover was asked about his experience concerning the maturation and rehabilitation of juvenile offenders, like [Elliott], and the prosecution objected that a comparison between [Elliott] and other inmates was irrelevant. The court sustained. The Warden's testimony was relevant to proving that [Elliott] had matured and rehabilitated himself, an essential claim in any Miller proceeding, constituting both mitigating and character evidence. The circuit court abused its discretion and violated both Miller and the Eighth Amendment in finding the testimony irrelevant. ...

See Docket Entry 2 at CM/ECF 15.

Elliott's fifth claim warrants no relief. It was presented to, and addressed by, the state courts as a state law evidentiary claim. See Docket Entry 11-5 (Exhibit B) at CM/ECF 43-45; Elliott v. State, 2021 WL 2012632. It is axiomatic, though, that a violation of state law warrants no federal habeas corpus relief. See Estelle v. McGuire, 502 U.S. 62 (1991) (federal habeas corpus relief does not lie for errors of state law); Evenstad v. Carlson, 470 F.3d 777 (8th Cir. 2006) (federal courts lack authority to review state courts' interpretation and application of state law).

To the extent Elliott's claim is built upon a violation of federal law, the claim is without merit for two reasons. First, the claim is not built upon the same legal bases as the claim he raised on appeal. See Interiano v. Dormire, 471 F.3d 854 (8th Cir. 2006) (claim raised in federal habeas corpus

petition must rely upon same factual and legal bases as claim raised in state court). The claim on direct appeal was couched in terms of a violation of state law; the claim at bar is couched in terms of a Due Process and Equal Protection.

Second, notwithstanding the foregoing, Elliott cannot show that preventing Deputy Warden Phillip Glover ("Glover) from comparing Elliott's rehabilitation with the rehabilitation of other inmates was so gross, conspicuously prejudicial, or otherwise of such magnitude that it fatally infected the trial and failed to afford Elliott the fundamental fairness which is the essence of due process. See Maggitt v. Wyrick, 533 F.2d 383 (8th Cir. 1976). Giving the state Supreme Court's adjudication of the claim the deference it is due, the appellate court could and did find that Glover did not know Elliott "when he was a juvenile and any evidence comparing [his] character and subsequent rehabilitation to the character and rehabilitation of other inmates is irrelevant." See Elliott v. State, 2021 WL 2012632, 6.

VI. CONCLUSION. The undersigned finds that Elliott's claims were reasonably adjudicated by the state courts or otherwise warrant no relief. It is therefore recommended that his petition be dismissed. All requested relief should be denied, and judgment should be entered for Payne. In

accordance with Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, a certificate of appealability should also be denied. Elliott cannot make a "substantial showing of the denial of a constitutional right." See 28 U.S.C. 2253(c)(2).[7]

DATED this 11th day of April, 2023.

_____
UNITED STATES MAGISTRATE JUDGE

---

[7]    It is worth observing that it is not clear what Elliott's sentence actually is. The Sentencing Order reflects that his sentence is "life," see Docket Entry 11-2 (Exhibit A-1) at CM/ECF 222, which is consistent with the maximum sentence for a Class Y felony. His attorney at the 2002 re-sentencing took the position that "life" means "life without parole, because you can only get paroled on a life sentence when the governor commutes it to a term of years, so you're sitting on a life sentence and you're in prison without parole, unless there's the eventuality of the governor commuting it to years, to a term." See Docket Entry 11-4 (Exhibit A-3) at CM/ECF 10.

In the direct appeal of Elliott's 2020 re-sentencing, the state Supreme Court noted that he faced "a possible sentence of ten to forty years in prison, or life, with parole eligibility after thirty years." See Elliott v. State, 2021 WL 2012632, 2. The "with parole eligibility after thirty years" language, though, appears to come from the FSMA, which the appellate court had earlier found did not apply to him. See Elliott v. State, 2019 WL 2223122.

This confusion is ultimately of no significance for purposes of federal habeas corpus review because Miller held only that a mandatory sentence of life without parole is unconstitutional when the mitigating qualities of the juvenile offender are not considered. Here, the jury considered the mitigating qualities of Elliott's youth and had the option of sentencing him to a term of years.